# Hess's Appeal.

### Execution of last Will and Testament.

43　　73
213　　137

Where a will, written in the presence of the testator, and according to his dictation, is executed in accordance with the statutes, it is valid, though not read to or by him.

APPEAL from the Register's Court of *Lebanon county*.

. This was an appeal by Simon Hess and John Hess, two of the sons of Michael Hess, deceased, from the decree of the Register's Court of Lebanon county; composed of Hon. John J. Pearson, P. J., William Rank, and Thomas Kramer, associate judges, and Henry Bross, Register of Wills of said county; confirming the decision of the register, admitting to probate a paper purporting to be the last will and testament of deceased.

The material facts of the case will be found in the following opinion of the president of the Register's Court.

"There is but one question raised on the evidence. Is the paper offered for probate sufficiently established as the will of Michael Hess?

"The sanity of the testator, and his full mental capacity to make a valid will, has not been called in question, and the signature of the instrument, and due publication in presence of two witnesses, who attested it in presence of the deceased, is conceded. The only point raised is, can the writing be estab-

lished· as a will, when never read over to or by the testator ? The two subscribing witnesses, David Elliott and. Cyrus Bender, were called by the contestants, to prove that the will was not read to the deceased in their presence.   They testify that they were called in as witnesses, the deceased was asked if it was his last will and testament, said it was, requested Esquire Shuey to write his name to it for him, as his hand trembled, made his mark in presence of the witnesses, and they both attested it in his presence.   They prove that the writing was not read in their hearing, nor did they see the deceased reading it.   Their evidence sufficiently establishes the will, and it is proved in due form of law, as it is not expected that the witnesses shall hear the paper read, or be conversant with its contents.   It is sufficient that the party signing declares it to be his will in presence of the witnesses, and that they attest it in his presence.   Is this writing disproved, and its authenticity as a will destroyed, by the testimony of Esquire Shuey ?   He deposes that when sent for, and the object of his visit explained, a table was set by the bedside of the sick man, and all the persons sent out of the room ; the directions for the will were given, and a memorandum made, the formal parts written, and then the witness interrogated the deceased from the memorandum, to see if his memory was perfect, and they understood it alike.   The will was then written down carefully as directed, and the witness says that he wrote down nothing but what was ordered by the deceased, and all that he ordered: that all was done with care and accuracy, but the will was not read over to the decedent, on account of his extreme deafness, and the impossibility of making him hear without all of the persons in the adjoining room hearing it also ; which the witness inferred was not intended, from the fact of their having been sent out of the room.   It further appears that the decedent could not read English, and the writing was in that language, though dictated in German, which both parties well understood. Does the want of reading invalidate the will ?   We have no statutory provision requiring a writing of this kind to be read, and are left to the general principles of the common law, which exacts knowledge of the contents of every instrument before it· can become obligatory, and more especially those of a testamentary character.   The only mention of reading in the Act of Assembly is to be found in the 14th section of the Act of 1833, relating to the repeal of a devise of land, by a nuncupative will, which must be reduced to writing in the lifetime of the testator, 'and *read* to or by him.'

"Every person who executes a will in due form is presumed to be acquainted with its contents, without ·direct proof that it was read to or by him.   This knowledge may be disproved by the evidence of a single witness ; or established by like testimony.

Lewis v. Lewis, 6 S. & R. 489. The general rule is laid down by Judge Washington in Harrison v. Rowan, 3 W. C. C. Rep. 385, that if evidence be given that the testator was blind, or from other cause incapable of reading : or if reasonable ground is laid for believing that it was not read to him, or that there was fraud or imposition of any kind practised upon the testator, it is incumbent on those who would support the will, to meet such proof by evidence, and to satisfy the jury either that the will was read, or that the contents were known by the testator. This principle is reiterated by Judge Rogers in Harden v. Hays, 9 Barr 163, and by Judge Lewis in Harding v. Harding, 6 Harris 342.

" The decedent in the present case could not read or understand the English language, in which the will was written, and, therefore, in regard to it stood in the situation of a blind man, as is intimated by Judge Lowrie in Hoshauer v. Hoshauer, 2 Casey 406.

" All of the cases lay great stress on proof that instructions were given to prepare the will, as repelling any presumption of fraud or imposition in cases of alleged weakness or imbecility. But Jarman, Vol. 1, p. 46, says that such proof is not indispensable, other evidence of knowledge or assent may be given, and when the party is of mental capacity, knowledge of, and assent to, the contents is presumed. It rests upon the party objecting to disprove it.

" In the case under consideration, those objecting to the will have fully proved that instructions to prepare it were given, and that it was truly written down by the scrivener pursuant to the instructions, in presence of the testator, so that there was no possible danger of mistake from those instructions being carried in the mind for some distance, or a period of time. It comes to the single question, Is reading indispensable, or can knowledge of the contents be established by other evidence ?

" When the will is not read, it must be shown to the satisfaction of the court that its contents were otherwise known to the decedent. As where it was copied from a paper, the contents of which were known to the testator : 2 Green's Ch. Rep. 562. So it can be shown that the will is substantially in accordance with the instructions of the testator, it may be considered that he was acquainted with its contents. But if in drawing out, the instructions are materially departed from, the testator must be made acquainted with the deviations and alterations—if the testator does not know—if the will is not read over, or its contents and variations otherwise made known to him, it cannot be sustained : 1 Harrington 454, 464. There are but few cases where actual reading over is necessary, the contents may be shown otherwise to have been known to the testator : 4 Harring-

ton 351.    It is said in Virginia, 3 Leigh 82, that the will of a
blind man need not be proved to have been read to him, if it
appear from other circumstances that he knew the contents of
the paper, or the substance of it : Swinburne, Vol. 1, p. 166,
lays down the general position, that 'a will is not good if not
read,' but the court in 2 Lewis 291, says, this is only a rule of
the civil law, not of the law of this country, and the want of
reading can only be used ·as evidence of fraud or imbecility.    If
that is removed, and it can be shown that the testator knew the
substance of the contents, it is sufficient.    Such is also substan-
tially the decision in 7 Georgia Rep. 564, and 12 Georgia 692.
The court in 2 Lewis 291, applies the doctrine to wills, that
rules in regard to deeds, as laid down in Thoroughgood's Case,
2 Co. Rep. 9.    'If a deed be falsely read to a party, even by a
stranger, he may avoid it, but if the party who should deliver
the deed doth not require it to be read, he shall be bound by it,
though it be penned against his meaning.'    This doctrine we
consider erroneously applied to wills.    Sir John Nicholl, in the
consistory court, 1 Phillimore 187, says, 'Execution of the will,
generally speaking, implies everything till the contrary is proved;
proof of reading over, proof of instructions, is not necessary,
unless the capacity is shown to be doubtful.'    In that case
throughout, *instructions* seem to be placed on the same footing
with *reading over.*    In the case now before us we have full and
clear evidence of '*instructions*,' as proved by the objectors, and
also that the instructions were followed.

    " Sir John Nicholl, in another case, 1 Phillimore 357, says :
' Upon the point of law, there certainly have been cases where
a paper, written in the lifetime of the testator, but neither re-
duced into writing in his presence nor read over to him, has
yet been established : but then they have been so established
upon cases perfectly clear, both as to the intention of the de-
ceased, *conveyed by his instructions*, and that the paper was
exactly conformable thereto :' and he cites many authorities in
support of this opinion.    See also 2 Eccl. Rep, 361 ; 2 Addams
.441 ; 3 Eccl. Rep. 260.    Knowledge of the contents may be
proved by circumstances, even in the case of a blind or illiterate
man : 3 Starkie's Ex. 1261–2, and notes.

    " In Pennsylvania, at an early period, the doctrine was fully
recognised, that the want of reading would not vitiate a will;
therefore, where instructions were given by the deceased for pre-
paring such an instrument, of which a memorandum was taken
down in writing, but the party died before a formal will was pre-
pared and signed,·the memorandum, proved by two witnesses,
was admitted to probate : 1 Yeates 87.    This case was afterwards
approved of by Judge Duncan, in Vossetter *v.* Simmons, 6 S. &
R. 452, the facts of which were very similar.    The memorandum

was not read over in that case, but the drawing of a will had been dictated. It was reduced to writing in the lifetime of the testator, but not read to him, as he died about the time it was completed, and the ·instrument was established as a nuncupative will. In his opinion the learned judge proceeds to show, that before the Statute of Frauds a scrap of writing might have been established as a will by the testimony of one witness: Powell on Dev. 31.

"And where a man gives his lawyer directions about making his will, of which short notes were taken in writing, from which a will was prepared, but not read to the party, it was held good: Brown v. Sockville, Dyer 72; and it is there said, 'that whenever a will is written by the direction of the devisor, and with his consent, it is good; but if·done ·by any one present, of his own head, and not afterwards read to the decedent, it is invalid.'

"A somewhat similar case is to be found in 3 Yeates 511, though there the memorandum, when made, was read over to the testator. The case of Lewis v. Mins, 1 Dal. 278, is not in conflict with those principles, for there the memorandum was only proved· by one witness, and the will was never signed or executed by the party. We must bear in mind that the case now under consideration is that of a regularly executed will, conforming in every particular to the requirements of the Act of Assembly, and that the attempt is to destroy it by the testimony of a single witness, which appears to be quite as dangerous as to establish the writing without proof that it was read to the testator. The statute guards against the revocation of·a will by proof, and requires the instrument of revocation to be proved by two witnesses; yet this will is asked to be destroyed by one witness. We have do doubt, however, but that this is competent. A single witness may prove fraud in reading a will—that it was read, or was or was not read, or was falsely read. This is abundantly established, both on principle and authority. Lewis v. Lewis, 6 S. & R. 489, decides that where a will is properly signed and witnessed, proof of knowledge of its contents can be established by a single witness; that fraud and imposition, or. the absence of either, can be proved by one witness as well as by a hundred, if he is believed.

"The omission to read this will is legally and properly established by the evidence of Esquire Shuey alone, and the same witness fully proves that the deceased knew the contents of the instrument, by dictating its terms, and that the whole was carefully and correctly written down in his presence, according .to his instructions. We have here one of the two alternatives laid down by Judge Washington, and reiterated and adopted by Judge Rogers, fully made out, 'that the will was read, *or the contents known by the testator.*' The contents were as fully known here

as they would have been by Esquire Shuey stating over to the decedent in German the substance of what he has written down in English, and it brings home all that kind of knowledge of the contents of this will which the common law requires; and there is no statute regulating such cases. We are of the opinion that this will is duly proved, and that letters testamentary must be issued thereon by the register."

The case was argued in this court by *Josiah Funck* and *Levi Kline*, for the appellants, who contended that, as the will was neither read nor explained to the testator before signing, it was invalid; citing and relying on Hoshauer *v.* Hoshauer, 2 Casey 486; Harden *v.* Hayes, 9 Barr 163; Harrison *v.* Rowan, 3 W. C. C. Rep. 585; Harding *v.* Harding, 6 Harris 340; 1 Wms. Ex. 17, 18; Aurand *v.* Wilt, 9 Barr 54; Graybill *v.* Barr, 5 Barr 441; Cavett's Appeal, 8 W. & S. 21; Hock *v.* Hock, 6 S. & R. 47; Lewis *v.* Maris, 1 Dall. 299; Vernon *v.* Kirk, 6 Casey 218.

*Jacob Weidle*, for appellees.

The opinion of the court was delivered, May 29th 1862, by
Lowrie, C. J.—This will is in writing, and signed by the testator at the end thereof, and proved by two witnesses, and therefore it has all the statutory requisites of validity. But the survivor, who was not one of the subscribing witnesses, testified that he did not read over the will to the testator after he had written it, and that he wrote it according to the dictation of the testator and in his presence. The defect alleged is, therefore, that one of the *usual* forms, not enjoined by the statute, the reading of the will, was omitted. Does this render the execution nugatory? The opinion of the learned judge below fully proves that it does not. We should have to add a new provision to the statute to affirm that it does. It is only because wills are less common in fact and in substance than other writings, that we are more exacting in relation to the formality of reading before signing. But when the very witness who proves the omission proves also the authenticity of the writing, as the very will of the testator, ascertained and written from his own dictation freely made, then what have we to doubt about? When the testator trusts his scrivener, why should we distrust him, when there is no word or act that impeaches his honesty? The decision below was, that where a will, written in the presence of the testator, and according to his dictation, is executed in accordance with the statutes, it is valid, though not read to or by him; and the cases cited by the learned judge show that the decision is right.

Appeal dismissed at the cost of the appellants.